*0*

FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**   2006 AUG 24  AM 11: 12
**SAN ANTONIO DIVISION**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

|  |  |  |
|---|---|---|
| MARIA SALINAS, **Plaintiff** | § § § | CIVIL ACTION NO. |
| VS. | § § | |
| CITY OF NEW BRAUNFELS, **Defendant.** | § § § § | **SA06CA0729 XR** **JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiff, MARIA SALINAS, brings this suit against Defendant, CITY OF NEW BRAUNFELS, and in support states as follows:

### STATEMENT OF THE CLAIM

1.    Plaintiff files this civil action for declaratory, injunctive, and monetary relief as redress from Defendant for its unlawful discrimination based on Plaintiff's disability, including the failure to timely provide Plaintiff the appropriate auxiliary aids and services while responding to an emergency call at Plaintiff's home.  Plaintiff asserts that Defendant discriminated against her in violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 ("Section 504"), and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12131 *et seq.* ("ADA").

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §1331.

3.    Venue is invoked pursuant to 28 U.S.C. §1391, and properly lies within the San Antonio Division of the Western District of Texas because all of the events complained of occurred within Comal County, Texas.

**PARTIES**

4.      Plaintiff, Maria Salinas, is an individual residing at 770 IH 35 N., Apt. #1115 in New

Braunfels, Comal County, Texas.  Plaintiff is deaf and relies on the use of American Sign Language

to communicate.

5.      Defendant, the City of New Braunfels, is a public entity covered by the ADA.  Because

Defendant is also a recipient of federal financial assistance, it is also subject to the requirements of

Section 504.

6.      Defendant, City of New Braunfels, has under its administrative control the New Braunfels

police department and the New Braunfels fire and emergency medical services departments.  Each

of these departments is a public entity covered by the ADA and each is a recipient of federal

financial assistance.  Therefore each must comply with the ADA and with Section 504.  Defendant

may be served through the Mayor of New Braunfels, at 424 S. Castell New Braunfels, Texas

78131-1747.

7.      Defendant City of New Braunfels operates a Police Department that provides "911 Services,"

"Domestic Problem Calls," "Sick Person Calls," "Accident Investigation," "Injured Persons

Services," and many other similar services as part of its commitment to serve and protect the

residents of New Braunfels.

8.      Defendant City of New Braunfels failed to provide Ms. Salinas with appropriate auxiliary

aids and services, failed to provide her with the opportunity for effective communication, and failed

to ensure the reasonable accommodation of her disability during her interaction with New Braunfels

police and other city personnel in September of 2004.

2

9.      Defendant City of New Braunfels has failed to implement appropriate written policies and actual practices aimed at ensuring that deaf and hard of persons are accommodated and provided appropriate auxiliary aids to ensure their effective communication with city police and other emergency service personnel.  Defendant City of New Braunfels has not conducted training of its employees adequate to ensure that said employees appropriately accommodate and provide appropriate auxiliary aids and services to deaf and hard of hearing persons.

10.      Defendant has acted with deliberate indifference toward, and with reckless disregard of, Plaintiff's federally-protected rights under Section 504 and the ADA.

### STATEMENT OF FACTS

11.      Plaintiff Maria Salinas has a bilateral, profound hearing loss.

12.      Ms. Salinas uses American Sign Language ("ASL") to communicate and relies on ASL interpreters to communicate with other people who do not sign.

13.      On September 23, 2004, Ms. Salinas returned home to her apartment from work and unexpectedly found her boyfriend, Mr. Ed Spencer, lying motionless on her couch. She was unable to rouse him.

14.      Alarmed and upset, Ms. Salinas went to her neighbor's apartment to seek assistance from her neighbors, who returned with her to the apartment and called "911" to request emergency assistance and the services of a qualified sign language interpreter on her behalf.

15.      On information and belief, although the New Braunfels police were aware from the 911 call that Ms. Salinas was deaf and had requested interpreter services, the police did not attempt to locate a qualified interpreter in response to her request and failed to assign this task to another city

employee. None of the responding officers was able to sign or to communicate effectively with Ms. Salinas.

16.    Upon the arrival of the police in her home, the officers were again notified that Ms. Salinas was deaf and needed the services of a qualified sign language interpreter in order to understand what was being said. On information and belief, although the police were given the names of two qualified sign language interpreters in the New Braunfels area, the officers again refused to attempt to locate a sign language interpreter through which to communicate with Ms. Salinas and failed to assign this task to another city employee.

17.    On information and belief, one of these interpreters did eventually speak with one of the officers on the scene, informed him directly on Ms. Salinas's behalf that an interpreter would be needed to communicate with Ms. Salinas, and gave the officer a number to call to obtain paid interpreter services because she was unable to leave her work to interpret at the scene. During this call, it is believed that the officer relayed that the police were trying unsuccessfully to communicate with Ms. Salinas. On information and belief, although the interpreter with whom the officer spoke strongly urged the police officer to call the agency that could provide the needed service for a fee, the officer refused to seek paid interpreter services.

18.    Without an interpreter present, Ms. Salinas was unable to understand what was going on in her apartment, did not know what functions the police were performing, remained unsure about her boyfriend's prognosis, and became increasingly distraught as she was left out of the many communications taking place around her.

19.    Not having succeeded in obtaining free interpreter services, the officer next attempted to communicate with Ms. Salinas by going to the manager of the apartment complex to learn if anyone

4

on the premises knew sign language. The manager was familiar with the sign language alphabet, but was not able to communicate in American Sign Language. Unfortunately, the assistant manager's knowledge of the alphabet was so limited that she could not communicate effectively with Ms. Salinas and she remained isolated, frustrated, and unable to communicate with the police and other personnel.

20.     On information and belief, the officer relied on the apartment manager's minimal knowledge of the alphabet in order to obtain Ms. Salinas's permission to conduct a search of her home.

21.     On information and belief, the officer relied on the apartment manager's minimal knowledge of the alphabet in order to ask Ms. Salinas questions about her boyfriend's illness and use of medications.

22.     Ms. Salinas, emotionally distraught over her boyfriend's condition and not able to learn the fact or cause of his death, became increasingly upset as the events during the police response to her call took place without her even minimal understanding. Unable to communicate to the officers her concerns about her boyfriend's medical history, her knowledge as to his condition in the days leading up to his death, and her questions concerning what had happened and what would happen, Ms. Salinas experienced for several hours a period of prolonged and acute emotional distress and anxiety. At some times during this period, she was unsure as to whether or not she was the suspect in a murder investigation. At others, she was unsure as to whether her loved one might be revived.

23.     Instead of obtaining a local, qualified sign language interpreter in order to communicate effectively with Ms. Salinas, a New Braunfels police officer, frustrated with his inability to communicate with Ms. Salinas through the services of a free interpreter or through an apartment manager with insufficient interpreting skills, relegated her to her bedroom and motioned for her to

5

wait there. Ms. Salinas' experience of his gestures was one of fear and hurt, and – not having access to the words he spoke or his apparent reasoning – she felt the officer was being deeply disrespectful of her, and callous.

24.     As a result of this relegation, Ms. Salinas was unable to see or hear what the police officers and emergency medical personnel were doing in the other areas of her home or to her boyfriend's body. Because she was deaf and the police would not pay the fee to obtain a qualified interpreter to discuss the situation with her, Ms. Salinas suffered in isolation and fear in the hours following the apparent death of her loved one.

25.     Still acting without a qualified interpreters, a police officer eventually came back into the room where Ms. Salinas had been relegated and indicated via a written note that he needed to search her bedroom as well. As a result of the police officer's inability to communicate effectively with Ms. Salinas, the police officer could not explain what they were looking for or what they thought might have happened to her boyfriend. Understandably, Ms. Salinas felt confused by this expanded search and was not given the same opportunity as a person without a communication-related disability would have been to attempt to question why the search was expanded.

26.     Although the New Braunfels police clearly needed to communicate with Ms. Salinas and attempted to do so on many occasions, they failed to give primary consideration to her communication needs or to ensure that the means of communication they were attempting were effective for Ms. Salinas.

27.     Ironically, as the police officers were attempting these ineffectual means of communication with Ms. Salinas, a certified sign language interpreter arrived in response to Ms. Salinas' earlier cries for help via her pager. On information and belief, the police did not permit this interpreter access to

Ms. Salinas, but instead attempted to turn her away and told her she was not needed. It is believed that the interpreter was not permitted to interpret because the police did not wish to pay for her services. In the end, they permitted her access but did not pay her.

28.     Despite Ms. Salinas's status as tenant of the apartment in question, her status as the caller requesting help in response to a loved one's sickness, and her close relationship to Mr. Ed Spencer, the deceased, at no time were the police officers successful in communicating to her any information concerning Mr. Spencer's condition or the purpose, phase, or results of their investigation.

29.     Furthermore, as a result of the New Braunfels police and emergency personnel's actions and inactions and discriminatory conduct, Ms. Salinas has sustained damages including but not limited to loss of self esteem, emotional distress, and continued feelings of isolation, and segregation. Her inability to trust the New Braunfels police and emergency personnel to serve and protect her in the same manner that they protect and serve persons without disabilities persists.

30.     As a result of the New Braunfels police and emergency personnel actions and inactions, Ms. Salinas was treated in a different, disrespectful, and discriminatory manner during a period of crucial significance in her development of her own personal response to a loved one's death and of her understanding of that life-shaping event.

31     Additionally, at no time did the New Braunfels police provide Ms. Salinas with the name of their ADA or Section 504 Coordinator or information concerning how she could obtain appropriate auxiliary aids or services in order to followup on the results of their investigation.

32.     Additionally, even though the New Braunfels police were aware that Ms. Salinas was quite upset about their failure to provide appropriate auxiliary aids and services during this emergency

response, they also did not provide her with information concerning the City's grievance policy for ADA or Section 504 violations.

33.     On information and belief, the New Braunfels police department lacks a coherent policy for responding to the basic and consistent communication needs of deaf and hard of hearing residents, and their policies and practices will therefore continue to be violative of both Section 504 and the ADA.

**COUNT I**
**DEFENDANTS DISCRIMINATED AGAINST PLAINTIFF IN VIOLATION OF**
**SECTION 504 OF THE REHABILITATION ACT OF 1973.**

34.     Plaintiff re-alleges Paragraphs 1-33 as set forth herein.

35.     Section 504 states that "no otherwise qualified individual with a disability in the United States ... solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or the United States Postal Service." 29 U.S.C. §504(a).

36.     Plaintiff's hearing loss substantially limits or interferes with major life activities, including her ability to hear. Plaintiff is an individual with a disability as defined by Section 504. 29 U.S.C. § 705(20)(B).

37.     Plaintiff is a qualified individual with a disability under Section 504. 28 C.F.R. § 41.32(b).

38.     Plaintiff, as a citizen and consumer residing in New Braunfels, was and will continue to be in need of Defendant's public safety and emergency response services. A resident of Comal County, she continues to fall within the New Braunfels catchment area for safety and emergency services and

must rely on the same departments that have previously discriminated against her because of her disability. Because there appears not to have been any improvement in the New Braunfels policies and practices pertaining to persons who are deaf or hard of hearing, there is a substantial likelihood of this discriminatory conduct reoccurring. Therefore, Ms. Salinas faces a high probability or real and immediate harm if Defendant's practices toward the deaf and hard of hearing are not immediately corrected. Accordingly, Ms. Salinas seeks to enjoin Defendants from committing further violations of Section 504.

39.     By Defendants' actions and inactions described above, Defendants discriminated against Plaintiff in violation of Section 504 and its implementing regulations by, among other things:

     a.    excluding Plaintiff from participation in, denying her the benefits of, and otherwise subjecting her to discrimination under Defendants' programs and activities;

     b.    denying Plaintiff the opportunity to participate in and benefit from Defendants' aids, benefits, and services to the same extent that a person who was not deaf or hard of hearing could participate and receive;

     c.    depriving Plaintiff of aids, benefits, programs, and services that are as effective as those offered to other non-disabled individuals by failing to establish and/or abide by effective communication procedures for the deaf and hard of hearing when responding to an emergency call;

     d.    failing to provide Plaintiff with aids, benefits, or services that are as effective as those provided to others who are not deaf or hard of hearing;

     e.    otherwise limiting Plaintiff in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving an aid, benefit, or service from Defendants

9

who are not deaf or hard of hearing ; and

f.      refusing to reasonably accommodate Plaintiff with  appropriate auxiliary aids and

services or to modify its policies or procedures to prevent discrimination because of

her disability.

## COUNT II

### DEFENDANTS DISCRIMINATED AGAINST PLAINTIFF IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990.

40.     Plaintiff re-alleges Paragraphs 1-36 as set forth herein.

41.     Plaintiff's hearing impairment substantially limits her major life activities, including

Plaintiff's ability to hear, and is an individual with a disability under the ADA.  42 U.S.C.

§12102(2).

42.     Plaintiff, as a citizen and consumer residing in New Braunfels, was and will continue to be

in need of Defendants' public safety and emergency response services. A resident of Comal County,

she continues to fall within the New Braunfels catchment area for safety and emergency services and

must rely on the same departments that have previously discriminated against her because of her

disability.  Because there appears not to have been any improvement in the New Braunfels policies

and practices pertaining to persons who are deaf or hard of hearing, there is a substantial likelihood

of this discriminatory conduct reoccurring.  Therefore, Ms. Salinas faces a high probability or real

and immediate harm if Defendants' practices toward the deaf and hard of hearing are not

immediately corrected.  Accordingly, Ms. Salinas seeks to enjoin Defendants from committing

further violations of the ADA.

43.     Plaintiff is a qualified individual with a disability under the ADA. 42 U.S.C.A. § 12131(2).

44.    Defendants violated Title II of the ADA in that they:

    a.    discriminated against Plaintiff because of her disability in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(a);

    b.    failed to ensure that communications with Plaintiff were as effective as communications with non-disabled individuals in violation of 28 C.F.R. § 35.160(a);

    c.    failed to provide auxiliary aids and services, including qualified interpreters to Plaintiff, in violation of 28 C.F.R. § 35.160(b);

    d.    failed to modify policies, practices, or procedures to avoid discrimination against Plaintiff, in violation of 28 C.F.R.§ 35.130(b)(7);

    e.    acted in a discriminatory manner toward Plaintiff because of her disability and failed to ensure that programs, services, and activities were accessible to Plaintiff in violation of 28 C.F.R. § 35.130(b)(1);

    f.    excluded Plaintiff from programs, services and activities of the public entity and denied Plaintiff the benefit of these programs, services, and activities due to her disability in violation of 28 C.F.R. § 35.130(b)(1); and

    g.    failed to provide notice of the designated ADA Coordinator, ADA Grievance procedures or ensure direct, communications with persons who are deaf.

### INJUNCTIVE RELIEF

45.    As a proximate result of Defendants' practices, policies and procedures, Ms. Salinas has suffered, and will continue to suffer irreparable injury due to denials of her statutory rights.

46.    Unless injunctive relief is granted, Ms. Salinas will suffer immediate and irreparable injury for which there is no remedy at law.

## PRAYER FOR RELIEF

THEREFORE, Ms. Salinas respectfully prays that this Court grant the following relief:

47.    Assume jurisdiction over the claims in Ms. Salinas' Complaint and cite Defendants to appear and answer herein;

48.    Enter a declaratory judgment stating that Defendants' practices, policies and procedures have subjected Ms. Salinas to discrimination in violation of Section 504 of the Rehabilitation Act, as amended, the Americans with Disabilities Act, and Chapter 121 of the Texas Human Resources Code. Specifically, Ms. Salinas seeks a declaration from the court that the failures of Defendants described in the above paragraphs have subjected Ms. Salinas to discrimination in violation of Section 504, the ADA, and Chapter 121.

49.    Issue injunctive relief requiring the Defendants to refrain from violating Section 504, the ADA and Chapter 121 during its interactions with persons who are deaf or hard of hearing.

50.    Award Ms. Salinas compensatory damages against the City of New Braunfels in the amount that the trier of fact deems appropriate for the injuries Ms. Salinas sustained due to Defendants' actions.

51    Order Defendants to pay Ms. Salinas' reasonable attorneys fees and costs of suit.

52.    Grant Ms. Salinas such other and further relief as this Court may deem just and proper.

DATED:  August 24, 2006

Respectfully submitted,


ADVOCACY, INCORPORATED

By:    _____

LUCY D. WOOD
State Bar No. 24013780
7800 Shoal Creek Blvd., Suite 142-S
Austin, Texas 78757
(512) 454-4816 (Phone)
(512) 302-4936 (Fax)

THOMAS J. CRANE
State Bar No. 05007320
6800 Park Ten Blvd, Suite 208-N
San Antonio, Texas 78213

ATTORNEYS FOR PLAINTIFF

13