**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARIA SALINAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-CA-729-XR** |
| | ) | |
| **CITY OF NEW BRAUNFELS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ORDER**

On this date, the Court considered Defendant City of New Braunfels' Motion to Dismiss.

For the reasons discussed below, the motion is DENIED (Docket No. 4).

**I. Factual and Procedural Background**

Plaintiff Maria Salinas filed this civil action for declaratory, injunctive, and monetary relief

against Defendant City of New Braunfels ("the City") for alleged unlawful discrimination based on

Plaintiff's hearing disability.  Plaintiff asserted that Defendant discriminated against her in violation

of Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with

Disabilities Act of 1990 ("ADA").

Plaintiff has bilateral, profound hearing loss, is deaf, and relies on the use of American Sign

Language ("ASL") to communicate.  She relies on ASL interpreters to communicate with people

who do not sign.  Plaintiff alleges that the City failed to provide her with appropriate auxiliary aids

and services, failed to provide her with the opportunity for effective communication, and failed to

ensure the reasonable accommodation of her disability during her interaction with the New Braunfels

police and other city personnel after she called "911" to report an emergency.

On September 23, 2004, Plaintiff returned home to her apartment after work and found her boyfriend, Ed Spencer, lying motionless on her couch.  It was later determined that Mr. Spencer was deceased.  Unable to rouse him, Plaintiff went to her neighbor's apartment for assistance, who returned with her to her apartment and called 911 to request emergency assistance and the services of a qualified ASL interpreter.  Plaintiff alleges that although the police knew from the 911 call that Plaintiff was deaf and needed interpreter services, the police did not attempt to locate an interpreter and failed to assign this task to another City employee.  As a consequence, none of the responding officers were able to communicate effectively with Plaintiff.

After the police arrived at the scene and determined that Plaintiff needed interpreter services, Plaintiff alleges that the police refused to attempt to locate two interpreters whose names were given to them.  Apparently, one of those two interpreters contacted the police at the scene by phone and informed an officer that Plaintiff would need an interpreter in order to communicate.  This interpreter allegedly told the officer the phone number to call to obtain paid interpreter services because the interpreter speaking on the phone was unable to leave her work and interpret at the scene.  The officer allegedly refused to seek paid interpreter services after being given that phone number.

Without an interpreter present, Plaintiff was unable to understand what was going on in her apartment, did not know what functions the police were performing, remained unsure about Mr. Spencer's prognosis, and became increasingly distraught as she was left out of the many communications taking place around her.

Not having succeeded in obtaining free interpreter services, the officer next attempted to communicate with Plaintiff by going to the manager of the apartment complex to learn if anyone on

the premises knew sign language. The manager was familiar with the sign language alphabet, but was not able to communicate in ASL. The assistant manager's knowledge of the alphabet was so limited that she could not communicate effectively with Plaintiff, who became frustrated from being unable to communicate with the police.

Plaintiff alleges that the officer relied on the apartment manager's minimal knowledge of the alphabet in order to obtain her permission to conduct a search of her home and to ask her questions about her boyfriend's illness and use of medications.  Instead of obtaining an interpreter, the officer allegedly directed Plaintiff to her bedroom and motioned for her to wait there. A police officer eventually came back into the room and indicated on a written note that he needed to search her bedroom.

An ASL interpreter eventually arrived in response to Plaintiff's earlier communication via her pager. The police allegedly did not give this interpreter access to Plaintiff. The police eventually gave the interpreter access in order to facilitate communication, but the police did not pay her. Plaintiff alleges that prior to the interpreter arriving at the scene, no officers were successful in communicating any information concerning Mr. Spencer's condition or the purpose, phase, or results of their investigation.

Plaintiff alleges that as a result of the New Braunfels police and emergency personnel's actions and inactions and discriminatory conduct, she has sustained damages including but not limited to loss of self esteem, emotional distress, mistrust of the police, continued feelings of isolation, and segregation.  Plaintiff alleges that the police never provided her with the name of their ADA or Section 504 Coordinator or information concerning how she could obtain appropriate auxiliary aids or services in order to follow-up on the results of their investigation.  Furthermore, she

alleges that the City's police department lacks a coherent policy for responding to the basic and consistent communication needs of deaf and hard of hearing residents, in violation of Section 504 and the ADA.

Plaintiff brought a claim against the City under Section 504, claiming that she is a qualified individual with a disability.  She seeks to enjoin the City from committing further violations of Section 504, which she claims are likely to be repeated due to the City's alleged deficient police practices in servicing individuals who are deaf or hard of hearing.  Plaintiff also brought a claim under the ADA, claiming that the city failed to ensure that communications with her were as effective as communications with non-disabled individuals, failed to provide auxiliary aids and services, failed to modify policies, practices and procedures to avoid discrimination, and failed to provide notice of the designated ADA Coordinator, all in violation of the ADA's implementing regulations.

In its motion to dismiss, the City argues that its officers did attempt to locate an interpreter but were unsuccessful.  The City points out that an interpreter did eventually arrive on the scene in order to facilitate communication.  Based on the Fifth Circuit case of *Hainze v. Richards*, the City argues that Plaintiff's ADA and Section 504 claims, which arose in the context of law enforcement activity, must be dismissed. Additionally, the City asserts that Plaintiff's reporting of an incident wherein she requested [that] police respond to her apartment does not fall in the category of "services, programs or activities of a public entity" of Title II as contemplated in *Hainze*.

## II. Legal Analysis

### A.    Legal standard for motion to dismiss

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept

all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to pursue his complaint and offer evidence in support of his claims. *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996). The Court may not look beyond the pleadings in ruling on the motion. *Baker*, 75 F.3d at 196. Motions to dismiss are disfavored and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 164 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, the Court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

**B.     The City's motion to dismiss Plaintiff's ADA and Section 504 claims is DENIED**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.   A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).  The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973[1],

_____

[1] 29 U.S.C. § 794(a). Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." *Id.*  A "program or activity" includes "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . ." 29 U.S.C. § 794(b)(1)(A).

and Congress' intent was that Title II extend the protections of the Rehabilitation Act "to cover all programs of state or local governments, regardless of the receipt of federal financial assistance" and that it "work in the same manner as Section 504." H.R.Rep. No. 101-485, pt. III at 49-50 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 472-73.  In fact, the statute specifically provides that "[t]he remedies, procedures and rights" available under Section 504 shall be the same as those available under Title II. 42 U.S.C. § 12133.  The Fifth Circuit has held that jurisprudence interpreting either section is applicable to both.  *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).  Title II further directs the Attorney General to promulgate regulations to effectuate the statute's purpose. 42 U.S.C. § 12134(a) (*see* 28 C.F.R. § 35, *et seq*.).

Courts have broadly construed the "services, programs, or activities" language in the ADA and the Rehabilitation Act to encompass "anything a public entity does." *Burden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001)); *Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 171 (3d Cir. 1997), *aff'd* 524 U.S. 206 (1998); *see Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998)(concluding that "services, programs, and activities include all government activities" and that the language "encompasses virtually everything that a public entity does"); *Innovative Health Sys,, Inc. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997), *superseded on other grounds by Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001) (stating that the "services, programs, activities" language of Title II "is a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context"); 29 U.S.C. § 794(b)(l)(A) (defining "program or activity" as used in the Rehabilitation Act as "all of the operations of" a qualifying local government); H.R. Rep. No. 101-485(II), at 84 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 367 (noting that Title II "simply

extends the anti-discrimination prohibition embodied in Section 504 [of the Rehabilitation Act] to all actions of state and local governments").  It would appear that a municipality's 911 emergency response services would fall within the category of "services, programs, or activities" covered by the ADA and Section 504.

A disabled plaintiff can succeed in an action under Title II if she can show that, by reason of her disability, she was either "excluded from participation in or denied the benefits of the services, programs, or activities of a public entity," or was otherwise "subjected to discrimination by any such entity." *Hainze*, 207 F.3d at 799.  A municipal police department qualifies as a public entity.  *See id.*  "The broad language of the statute and the absence of any stated exceptions has occasioned the courts' application of Title II protections into areas involving law enforcement." *Id.*

*Hainze* stands for the limited proposition that an on-the-street police response to a disturbance involving a mentally or physically disabled suspect does not fall within the ambit of Title II prior to the officer's securing of the scene and ensuring that there is no threat to human life.  *Id.* at 800.  The Court does not believe that Plaintiff's case falls within this category.  The Fifth Circuit stated that "[a] necessary prerequisite to a successful claim under Title II is that a disabled person be denied the benefits of a service, program or activity by the public entity that provides such service, program or activity." *Id.* at 801.  The Fifth Circuit further stated:

> [W]e hold that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk

-7-

> to innocents. While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public.

207 F.3d at 801.

> Once the area was secure and there was no threat to human safety, the Williamson County Sheriff's deputies would have been under a duty to reasonably accommodate Hainze's disability in handling and transporting him to a mental health facility. That would have put this case squarely within the holdings of *Pennsylvania Dep't of Corrections v. Yeskey* and the cases that have followed. But that was not the situation at bar.

207 F.3d at 802.  Plaintiff has alleged that the City is a recipient of federal funds and is subject to the ADA and Section 504.  Complaint, Docket No. 1, ¶ 6.  Plaintiff has also alleged that she is a disabled person who has been denied the benefits of a service, namely the City's 911 emergency response services.  The City has not alleged that Plaintiff was a suspect in the death of her boyfriend, and even if she was, there is no evidence that she was a threat to the safety of the officers or that the scene was not secure.  Furthermore, the City has not denied that it is the recipient of federal funds.  Viewing the facts in the light most favorable to Plaintiff, the scene was secure shortly after the police arrived, Plaintiff did not pose a threat to the safety of the officers, and Plaintiff requested reasonable accommodations for her disability, which were denied to her.

The City cites to *Bircoll v. Miami-Dade County*, 410 F. Supp.2d 1270 (S.D. Fla. 2006) for the proposition that Plaintiff's claims must be dismissed.  *Bircoll* held that "the ADA does not apply to on-the-street DUI stop" of a deaf individual, which is a holding in line with *Hainze*.  410 F. Supp.2d at 1285.  Both *Hainze* and *Bircoll* suggest that after the New Braunfel's police arrived at a scene in response to Plaintiff's 911 call and discovered that she was deaf and needed an interpreter, the officers were under a duty to reasonably accommodate her disability, so long as the area was

secure and there was no threat to human safety.

The Court also notes that this case is extremely similar to the case cited by Plaintiff in her response: *Center v. City of West Carrollton*, 227 F. Supp.2d 863 (S.D. Ohio 2002). This case, read in conjunction with *Hainze*, strongly supports the argument that a City's 911 emergency response services fall within the category of "services, programs or activities of a public entity" covered by the ADA and Section 504. In *Center*, the plaintiff sued the City of West Carrollton for its alleged failure to provide appropriate auxiliary aids and services to a deaf 911-caller after the police arrived at the scene. *Id.* at 864. The plaintiff alleged that the officer denied her request for a qualified interpreter, that she could not adequately communicate with the officer, and that she suffered emotional distress. *Id.* The City of West Carrollton argued that the officer who responded to Plaintiff's call was able to communicate effectively with her and did not need the assistance of an interpreter. *Id.* at 866. In denying the City's motion for summary judgment, the district court held that the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment, and a jury was necessary to determine whether the officer's use of handwritten notes to communicate with Plaintiff was effective. *Id.* at 870. For purposes of this motion to dismiss, the Court is not holding that the auxiliary aids or services provided to Plaintiff were, in fact, ineffective for purposes of the ADA and Section 504; rather, the Court is merely holding that Plaintiff has stated a valid claim, which if proven, would entitle her to relief. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that she has alleged viable ADA and Section 504 claims against the City of New Braunfels.

### III. Conclusion

The City's motion to dismiss is DENIED (Docket No. 4).

It is so ORDERED.

SIGNED this 18th day of December, 2006.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE